UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MICHAEL J. WEBER LIVING TRUST,<br>    Plaintiff,<br>v.<br>WELLS FARGO BANK, N.A., et al.,<br>    Defendants. | Case No. 13-cv-00542-JST<br><br>**ORDER DENYING PRELIMINARY TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 15 |

Plaintiff The Michael J. Weber Living Trust ("Plaintiff") moves for a temporary restraining order ("TRO") seeking to restrain Defendant Wells Fargo Bank, N.A. ("WFB") from proceeding with a trustee sale of 14145 Byron Highway, Byron, CA ("the Byron property"). Dkt. No 15. Since Plaintiff has not demonstrated that it is likely to succeed, or even that there is any serious question going to the merits of its claim, the Court DENIES the motion.

## I.   BACKGROUND

**A.   Factual Background**

In July 2007, Plaintiff borrowed $780,000 from World Savings Bank, FSB ("World Savings"), secured by a deed of trust recorded against the Byron property. Declaration of Michael Weber ("Weber Decl."), Dkt. No. 15, ¶ 3; Defendants' Request for Judicial Notice ("RJN"), Dkt. No. 17, Exh. D.[1]  Later that year, Plaintiff borrowed an additional $732,000 from World Savings,

---

[1] Defendants request that the Court take judicial notice of, *inter alia*, the following exhibits: (B) a Deed of Trust dated July 12, 2007 and recorded in the official records of the Contra Costa County

secured by a deed of trust against 1928 Mantova Street, Danville, CA ("the Danville property"). RJN, Exh. B. World Savings later changed its name to Wachovia Mortgage, and then to Wells Fargo Bank Southwest N.A., before finally merging into WFB. RJN Exhs. F, G & H. Plaintiff defaulted on the Byron property loan in May 2012. RJN, Exh. J. Trustee NDex West, LLC, recorded a Notice of Trustee's Sale on October 1, 2012. RJN, Exh. L.

**B.      Procedural History**

On October 31, 2012, Plaintiff filed a complaint in Contra Costa County Superior Court against Defendant WFB seeking to enjoin the foreclosure proceedings against the Byron property. Case No. C12-02596. WFB removed the case to federal court. Case No. 3:12-cv-06122-LB, Dkt. No. 1. Plaintiff then voluntarily dismissed that case without prejudice. Case No. 3:12-cv-06122-LB, Dkt. No. 10.

On January 30, 2013, Plaintiff filed a complaint ("the Complaint") in Contra Costa County Superior Court against Defendants WFB and WFB employee Heather Polgar seeking, *inter alia*, to enjoin foreclosure proceedings against the Byron property and the Danville property. Case No. C13-00139. The Superior Court issued a temporary restraining order ("TRO") restraining the sale of the Byron property pending a hearing scheduled for February 8. Case No. C13-00139. Before that hearing occurred, WFB removed the case to this Court, arguing that Defendant Polgar was

---

Recorder's Office, (D) a Deed of Trust dated December 13, 2007 and recorded in the official records of the Contra Costa County Recorder's Office, (F) a letter dated November 19, 2007 issued by the Office of Thrift Supervision ("OTS"), Department of the Treasury, (G) the Charter of Wachovia Mortgage, FSB, effective December 31, 2007 and signed by the OTS, (H) the Official Certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia Mortgage converted into Wells Fargo Bank Southwest, N.A., which then merged into WFB, (J) a Notice of Default dated May 24, 2012 and recorded in the official records of the Contra Costa County's Recorder's Office, and (K) a Substitution of Trustee dated February 9, 2011, and recorded in the official records of the Contra Costa County Recorder's Office. The Court may take judicial notice of matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Because Exhibits B, D, J, and K are public records, the Court takes judicial notice of the undisputable facts contained in them. The Court also takes judicial notice of facts readily determinable from Exhibits F, G and H because the federal government agencies who issued and signed them are sources "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 202(b)(2). The Court did need to refer to the additional documents in Defendants' RJN, and so did not reach the question of whether those documents are judicially noticeable.

fraudulently joined and therefore could not defeat federal diversity jurisdiction. Dkt. No. 1.

On February 15, Plaintiff filed an application for a TRO and an order to show cause why a preliminary injunction should not issue, seeking to restrain WFB from proceeding with a planned foreclosure sale of the Danville property. Dkt. No. 6. On the day of a scheduled February 19 hearing on that motion, the Court granted the parties' request to continue the hearing to February 28. Dkt. No. 11. On the day of the continued hearing, the parties notified the court that Plaintiff had tendered $114,645.19 to reinstate the loan for the Danville property, and stipulated to the withdrawal of the motion for a TRO. Dkt. No. 13.

Plaintiff then filed this motion on March 12, to restrain the planned sale of the Byron property. Dkt. No. 15. WFB replied on March 18, and the Court heard the matter on March 21. Dkt. No. 17.

## II.   JURISDICTION AND LEGAL STANDARD

In its Notice of Removal, WFB asserts that this Court has diversity jurisdiction over this cause of action under 28 U.S.C. § 1332, because WFB is a citizen of North Dakota and Weber a citizen of California, and because the amount in controversy exceeds $75,000. Dkt. No. 1. Plaintiff has yet to respond to the Notice of Removal or file a motion to remand to state court. Ordinarily, a court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); see also § 28 U.S.C. 1447(c). The Court nonetheless proceeds to consider the merits of Plaintiff's application for injunctive relief because a federal district court may issue an injunction to preserve the status quo even when subject matter jurisdiction is disputed or unclear. See U.S. v. United Mine Workers of Am., 330 U.S. 258, 293 (1947).

The same legal standard applies to a motion for a TRO and a motion for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits,

3

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Nat. Resources Defense Council, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing is made on each factor." Leiva-Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011).  Provided that this has occurred, in balancing the four factors, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

### III.  DISCUSSION

Plaintiff argues that it is entitled to injunctive relief because it is likely to succeed on four sets of claims: (1) wrongful foreclosure, (2) violations of the newly-enacted "California Homeowners' Bill of Rights ("CHBR"), (3), fraud, promissory estoppel, and negligent misrepresentation causes of action, and (4) violations of California's Unfair Competition Law. The Court disagrees.

**A.  Wrongful Foreclosure**

Plaintiff asserts that it is likely to succeed on the merits of its claim for wrongful foreclosure because WFB is not the owner of the "beneficial interest" in the loan.  Complaint, ¶ 43; Plaintiff's Memorandum of Points and Authorities, 12:19-20.  To the extent that Plaintiff is arguing that securitizing a loan deprives a lender of the authority to foreclose, this theory fails as a matter of law.  As numerous district courts in this state have recognized, "a defendant bank does

4

not invalidate its ability to enforce the terms of a deed of trust if the loan is assigned to a trust pool or Real Estate Mortgage Investment Conduit ("REMIC")." E.g., Christiansen v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS 142070, at *9 (N.D.Cal. Oct. 1, 2002), and cases cited therein. See also Krug v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 143218, *7 (N.D.Cal. Dec. 13, 2011) ("Initially, Krug contends that as a result of his loan having been "securitized" and the particular manner in which that was done, the entities now seeking to foreclose lack standing to do so, either because they in fact do not have the legal right to enforce the security obligation, or because, at a minimum, they have not established that they have such a right. These same basic arguments have repeatedly been rejected by the courts in this jurisdiction.")

To the extent that Plaintiff is alleging that World Savings sold its *entire* interest in the loans in 2007, the only support for this claim is the conclusory statement of Michael Weber that shortly after taking out the loan, "the Subject Loan was pooled into a Real Estate Mortgage Investment Conduit and sold to a third-party," and that "[a]fter this transfer, World Savings no longer held any interest in the Subject Loan." Weber Decl., ¶ 5. Plaintiff provides no evidentiary support for this allegation, and at oral argument was unable to articulate the basis of Weber's knowledge. In opposition, Defendant offers judicially noticeable documents showing that there was a valid Substitution of Trustee on February 9, 2011, substituting NDEX West, LLC as trustee, and an unbroken chain of title for the loan from World Savings to WFB. RJN, Exhs. F, G, H & K.

"A verified complaint or supporting affidavits may afford the basis for a preliminary injunction . . . but if the facts so appearing consist largely of general assertions which are substantially controverted by counter-affidavits, a court should not grant such relief unless the moving party makes a further showing sufficient to demonstrate that he will probably succeed on the merits." K-2 Ski Co. v. Head Ski Co., 467 F.2d 1087, 1088-89 (9th Cir. 1972). A similar logic applies when a plaintiff makes an unsubstantiated allegation which is substantially controverted by recorded documentation. In opposing a motion for dismissal pursuant to Rule

5

12(b)(6) of the federal rules of civil procedure, it may suffice for a party to cite an unsubstantiated and heavily contradicted allegation, if it is plausible, since in considering that motion a court does not weigh the sufficiency of the evidence. But here, Weber's assertion does not demonstrate that the Plaintiff is likely to succeed on the merits of its claim, or even create a serious question going to the merits which warrants injunctive relief.

### B.     California Homeowners' Bill of Rights

Plaintiff invokes sections 2924.17 and 2914.18 of the California Civil Code, provisions of the recently enacted California Homeowners' Bill of Rights ("CHBR"). Complaint, ¶¶ 51-56. Section 2924.17 prohibits the practice of "robo-signing," in which servicers sign foreclosure documents without determining the right to foreclose. Cal. Civ. Code 2924.17(b). Section 2914.18 prohibits the practice of "dual-tracking," or proceeding with foreclosure while considering a lender's eligibility for loan modifications. Cal. Civ. Code § 2924.18. The Governor signed the CHBR into law on July 11, 2012, and it took effect on January 1, 2013. Ch. 86, Stats. 2012.

Like federal courts, "California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application." Myers v. Philip Morris Companies, Inc., 28 Cal.4th 828, 841 (2002) (internal citations and emphases omitted). The CHBR does not state that it has retroactive effect. Therefore, Plaintiff cannot succeed on its "robo-signing" claim, since it applies to actions that allegedly occurred before January 1. Moreover, as above, there is no evidence beyond Weber's declaration to indicate that robo-signing occurred.

As for the prohibition on "dual-tracking," Plaintiff has not demonstrated that the Byron property is "the principal residence of the borrower," as is required to invoke the CHBR's "dual-tracking" prohibition. Cal. Civ. Code § 2924.15(a). (The Court notes that Plaintiff owns at least

6

two different properties.)  In addition, "to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay," the CHBR provides that services are not required to "evaluate applications from borrowers who have already been evaluated . . . unless there has been a material change in the borrower's financial circumstances." Cal. Civ. Code § 2923.6(g).  In this case, Plaintiff acknowledges that WFB told Weber that they had denied Plaintiff's loan modification request in June 2012.  Weber Decl., ¶ 16.  WFB has also produced correspondence which informed Plaintiff as recently as January 29, 2013 that subsequent requests had also been denied.  Declaration of E. Christine Hehir ("Hehir Decl."), Dkt. No. 17, Exh. A.  Since Plaintiff has not demonstrated that there was a material change in his financial circumstances since the last denial, the Court cannot conclude that there are any serious questions going to the merits of this claim.

### C. Fraud, Promissory Estoppel and Negligent Misrepresentation

Plaintiff claims that it is likely to succeed on its fraud, promissory estoppel and negligent misrepresentation claims because WFB does not own any valid interest in his loan.  Complaint, ¶ 59.  As discussed above, Plaintiff's only support for this claim is the general allegation that World Savings sold its entire interest in the loan in 2007.  For the same reasons as discussed above, Plaintiff cannot demonstrate a likelihood of success or a serious question on the merits based solely on this assertion.  Plaintiff's fraud claim is particularly unlikely to succeed since in pleading fraud a plaintiff must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. Pro. 9(b).

Plaintiff also claims, again based solely on the Weber declaration, that WFB employees made several inconsistent statements to him about whether he had been approved for loan modifications, including statements allegedly made in March 2012.  Weber Decl., ¶¶ 15-23.  Specifically, Weber claims to have reasonably relied on an assertion by Defendant Polgar that he had been approved for loan modifications in March 2012 and needed only to await the final

7

paperwork on the modification. Weber Decl., ¶ 15. As previously noted, Weber acknowledges having been informed shortly thereafter, in June 2012, that his modification request had been denied. Any reliance after that point was clearly unreasonable.

In fact, the record is repleted with evidence — much of which Weber does not address — that Weber made subsequent requests for loan modification, short sale, and other relief that were also denied. WFB has produced written correspondence indicating that WFB disapproved Plaintiff's applications for a short sale on December 4, 2012 and again on January 27, 2013, and that WFB disapproved Plaintiff's applications for foreclosure alternatives on December 6, 2012, December 28, 2012, and again on January 29, 2013. Hehir Decl., Dkt. No. 17, Exh. A. Clearly Weber was not still relying on WFB's alleged March 2012 statements while he pursued his other requests for relief.

Weber also claims that he was charged a higher interest rate than had been stated on the mortgage note. Weber Decl., ¶ 29. He provides no evidence on the record showing that he has been overcharged on his interest payments. Since he claims he was overcharged "for several years," it is also difficult to understand why he did not take any action to remedy the situation prior to the eve of foreclosure. Weber Decl., ¶ 29.

In light of these discrepancies, and taken as whole, the court finds that Plaintiff's declaration lacks credibility. The court further concludes that Plaintiff has not shown that it is likely to succeed on these claims, or even that there is any serious questions going to their merits.[2]

### D.   Unfair Competition Law

Plaintiff's eighth cause of action alleges that WFB has violated California's "Unfair

---

[2] Even assuming that these actions constituted tortious conduct, it seems likely that Plaintiff would, at best, be entitled to damages for the amount it was overcharged and for any costs incurred in relying on WFB's statements about loan modifications. These claims, even if valid, sound in law rather than equity and do not entitle Plaintiff to injunctive relief because any harm would be reparable by monetary damages.

8

Competition Law" ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et. seq.*, which prohibits "unlawful" and "fraudulent" business acts.  Allegations of "unlawful" practices under the UCL "borrow" from other statutes.  See Ingels v. Westwood One Broadcasting Services, Inc., 129 Cal. App. 4th 1050, 1060 (2005).  Since, as discussed above, Plaintiff is unlikely to succeed in demonstrating any predicate violation, there is no serious question going to the merits of Plaintiff's allegations of unlawful practices.  UCL claims can also be based on a "fraudulent" business act, but as discussed above, Plaintiff has not shown that it is likely to succeed in demonstrating such a fraudulent act.  Therefore, there is no serious question on the merits of Plaintiff's UCL claims.

## IV.   CONCLUSION

Since the Plaintiff has failed to establish that it is likely to succeed on the merits of its claim, or even that there is any serious question of the merits, it has failed to establish one of the required elements for preliminary injunctive relief.  Based on the foregoing, Plaintiff's request for a TRO is DENIED.

**IT IS SO ORDERED**.

Dated: March 25, 2013

_____
JON S. TIGAR
United States District Judge